AUGUSTIN HOFFMAN, Appellant, v. EMIL P. HOFFMAN, Appellee.

May 8, 1928.

*W. S. Lewis*, for appellant.

*Cook & Cook*, for appellee.

KINDIG, J.—Involved in this controversy are two estates, and, for a more lucid understanding of a somewhat complicated affair, a statement of the relationships of the parties and the chronological facts is important.

Peter and Adelaide Hoffman were husband and wife. Augustin Hoffman, the appellant, and Emil P. Hoffman, the appellee, are their sons. On the 23d day of October, 1888, Peter Hoffman acquired, by warranty deed, title to certain real estate in Mills County. It is this land that is now in litigation. In December, 1907, appellant purchased this farm from his father for a consideration of $4,000, payable by the execution of a promissory note to Adelaide and Peter Hoffman, due on or before January 1, 1918, with interest at the rate of 5 per cent per annum. That instrument was secured by a mortgage on said acreage. Adelaide Hoffman, the mother, died intestate, October 30, 1914. Her estate was never administered, but, according to the record, she left no debts. After Adelaide's death, the "note" was left with the father, Peter Hoffman, who died testate, August 30, 1924. By the terms of his will, he gave appellee $2,000, which was to be collected from the "note," and the balance thereof due the testator, together with the residue

of his estate, was bequeathed to appellant. Appellee received the $2,000, and receipted therefor.

Subsequently, it appears, discovery was made by appellant that the mortgage to his parents, securing the $4,000 purchase price above named, could not be properly released, because the mother's estate was never settled, and appellee still retained an interest therein. That is to say, originally Peter Hoffman owned a one-half interest in the "note," and the other one half thereof belonged to Adelaide Hoffman; and when she died, one third of her one half was inherited by her husband, and the remaining two thirds descended to appellant and appellee, share and share alike.

Five propositions are suggested by appellant for reversal. However, he argues them under four points. They are: First, That appellee's election to accept the $2,000 under his father's will estops him from denying his brother, the appellant, the right to take under the same document; second, the statute of limitations; third, that a mortgage creates no interest in, but rather a lien upon, the real estate; and fourth, lack of authority for appellee to recover, because his mother's estate was not probated.

These contentions will be considered in the order made.

I. Under certain requisite facts, a devisee or legatee named in a will is required to affirm or disaffirm the instrument. Election so to do, under some circumstances, is imperative. *Hainer v. Iowa Legion of Honor,* 78 Iowa 245; *Kostelecky v. Scherhart,* 99 Iowa 120.

II. Yet, however that may be as a general legal proposition, nevertheless it is not controlling here, for the reason that there is nothing in the record to demand application thereof; for appellee is not opposing his father's will, nor is he denying appellant's right to take thereunder.

Foundation for appellee's claim in the case at bar is based upon his interest in the mother's estate, not the father's. So there is no inconsistency in the attitude taken by appellee. Consequently no "election" is necessary. Hence an estoppel does not result.

III. At this juncture, the assertion is made by appellant that appellee's demand is barred by the statute of limitations. Such plea relates to appellee's partial ownership of the note as

 an asset of his mother's estate. If the necessary period of time has not elapsed to prevent the assertion of that right, it is conceded that recovery on the instrument is allowable, for the reason that it is not ten years past due. Close analysis of the situation, however, reveals the fact that this position is not tenable. Parenthetically, it is recalled that the "note" in which Adelaide Hoffman owned a half interest was, at her death, retained by her surviving husband, Peter Hoffman. This was done, according to appellee's theory, so and in order that the living parent could collect the proceeds and make proper distribution of the same.

A careful reading of the entire record, together with the provisions of the will, sustains this idea. The will itself, although indefinite at this point, upholds that interpretation of the father's purpose in keeping the "note" in his possession. Because, in the third paragraph of the testamentary document, giving to appellant an interest in the "note," the language is:

"To my son Augustin, I give and will to him the balance (due), or to become due me from said four thousand dollar mortgage which I now hold * * * ."

Recognition was there made by the testator that some portion of the debt described was not his, and in this he was correct; for, in truth and fact, it did not belong to him, but rather, was the property of and "due" the estate of Adelaide Hoffman. If there is nothing due the testator, then neither appellant nor appellee could receive anything under the will. All that the testator owned was due him, and no more. He could give away what was his; not that which belonged to someone else. Therefore, the object of Peter Hoffman in holding the "note" was twofold: First, to preserve and retain his own share therein; and second, to act as trustee for appellant and appellee, so far as concerns the interest acquired by them through their mother's estate. Such fiduciary relationship existed until the death of Peter Hoffman, and he at no time repudiated it. Necessarily, then, the statute of limitations never ran. *Murphy v. Murphy,* 80 Iowa 740. Therein we said:

"As a general rule, the possession of property subject to the trust by the trustee is the possession of the *cestui que trust.* * * * Therefore, the trustee must repudiate his trust, * * * and notice of such repudiation * * * must be so given as to

make the *cestui que trust* chargeable therewith, before the statute will commence to run."

IV. As a defense to appellee's cross-petition asking for the foreclosure of the mortgage, appellant urges that such security contract does not create an interest in the real estate, and that, therefore, the title to the land in question should be quieted in him who is the fee-simple owner. To establish this doctrine, reliance is made upon *Keokuk Trust Co. v. Campbell*, 205 Iowa 414, and like cases. No doubt, a "mortgage," rather than conveying title to the premises, produces only a lien thereon. Manifestly, the principles under which appellee claims are misunderstood by appellant. Clearly, appellee is not disputing appellant's ownership of the farm. Forsooth, it is to appellee's interest that appellant have a good and valid title thereto. Limitation of appellee's demand is made to the foreclosure of the "mortgage" securing his one-sixth interest in the "note" which at one time was owned in common by his father and mother.

Consistent with the *Keokuk Trust Co.* case, it is sought to establish and foreclose a lien, as distinguished from an endeavor to obtain or maintain title.

V. Even though the above and foregoing be true, appellant asks a reversal because he says the appellee has no right to maintain this action, for the reason that the mother's estate was never probated. With this we do not agree. Section 11891 of the 1924 Code provides:

"Administration shall not be originally granted after five years from the death of the decedent, or from the time his death was known, in case he died out of the state."

Mrs. Hoffman, the mother, died in this state on October 30, 1914. Probate proceedings for her estate were never instituted, and the time for so doing has long since expired. There were no debts left by her. Thus, two thirds of the property of which she died seized belong to her heirs, appellant and appellee; the other one third went to her husband, became a part of, and was distributed with the other assets of his estate. The part thereof belonging to appellee has never been received by him, but, on the other hand, has been retained by appellant at all times since the father's death. *Murphy v. Murphy*, supra;

*In re Estate of Acken*, 144 Iowa 519. See, also, *Baldridge v. Evans*, 181 Iowa 204, and *Andrew v. Dunn*, 202 Iowa 364. We said in *Murphy v. Murphy*, supra:

"Administration of the estate of decedent was never granted. It is contended by appellant that it is not shown that it was impracticable to obtain administration when this action was commenced, and that there may be outstanding debts of decedent; hence, that plaintiffs have not shown themselves to be entitled to maintain this action. This action was commenced on the seventeenth of June, 1885; therefore, the time within which administration could have been granted had then expired. Code, Sec. 2367 [1873]. The evidence justifies the conclusion that the debts of decedent had then been fully paid. The plaintiffs, therefore, were the owners in fact of all the personal property of decedent which was not owned by defendant, and are entitled to the relief demanded in this action. * * * "

Again, in *In re Estate of Acken*, supra, we confirmed this doctrine by saying: ·

"In another case [*Murphy v. Murphy*, supra], where the period for granting letters had expired and the debts of the decedent had been paid, we held that the widow and heirs were entitled to maintain an action against another heir who had appropriated property of the deceased."

In truth, appellant has admitted appellee's right to the payment of this share, for, on October 16, 1926, he (appellant) wrote the following letter:

"Dear Brother [appellee]:

"I am writing you a letter to ask you to sign the paper that Mr. Record is sending you to sign. It means this. When I bought the farm from father and mother both, I gave father and mother mortgage for $4,000. Then mother died leaving no will and the mortgage is still not settled so it is for me and you to show that we are the only ones that can claim on that mortgage, that is from our mother * * * . Father's part of the mortgage is settled (through distribution by probate proceedings) * * * . We have not sent the money yet; but don't worry you will get it with interest in full to date of payment. In case you want the money sent to the bank in S. Dak. just notify the first National Bank at Glenwood * * * ."

After a careful and full review of the record and the au-

thorities bearing upon the problem now before us, we are constrained to hold that appellee is in a position to demand his share of Adelaide Hoffman's estate. This being in the nature of a one-sixth interest in said "note," judgment for that amount, together with the interest allowed, was proper, and the foreclosure of the mortgage given to secure that indebtedness was correct, under the circumstances.

Wherefore, the judgment and decree of the district court should be, and hereby is, affirmed.—*Affirmed.*

STEVENS, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.